Voight v. Voight.

---

ADOLPH VOIGHT, APPELLEE, V. FERDINAND VOIGHT, APPELLANT.

FILED JUNE 23, 1914. No. 17,679.

1. **Compromise and Settlement:** ACTION FOR CONSIDERATION. Defendant, who was the owner of a farm, was sued by plaintiff for labor performed thereon and for other considerations. An agreement was entered into, by the terms of which defendant agreed to turn over to plaintiff certain specified articles of personal property, rent his farm to plaintiff for a term of years at an agreed rental, and pay to plaintiff $2,000 in money when defendant sold said land, in consideration for which plaintiff was to dismiss his action against defendant. Defendant turned over to plaintiff the specified articles of personal property and put him in possession of the farm. Plaintiff dismissed his action against defendant. Soon thereafter defendant repudiated his agreement, refused to sell his farm, and evicted plaintiff therefrom, and also refused to pay the cash consideration of said agreement. *Held*, That such acts on the part of defendant rendered the cash consideration of the agreement at once due and payable.

96 Neb. 30

2. ———: Sufficiency of Evidence. The evidence examined, and *held* to sustain the verdict and judgment.

Appeal from the district court for Platte county: Conrad Hollenbeck, Judge. *Affirmed.*

*Critchfield & Rose* and *Albert & Wagner,* for appellant.

*A. M. Post* and *Reeder & Lightner, contra.*

Hamer, J.

This case involves a controversy between three brothers. They were farmers and lived together. Each was beyond the age of 60 years. The defendant was the owner of a farm in Platte county. His brothers came to live with him on this farm. He was a bachelor. One of the brothers, Adolph, was married. He brought his wife with him to live on the farm. The three brothers lived together on the brother's farm until shortly before the quarrel. The two brothers brought actions against the defendant. The wife of the plaintiff also brought an action against the defendant. Adolph Voight brought this action in 1908 against Ferdinand Voight in the district court for Platte county, alleging that he had entered into a contract with the defendant by which he (Adolph) and his daughter, Lena Voight, and his other daughter, Annie Voight, and his son, Christian Voight, and his other son, Henry Voight, should work for the defendant on the farm then owned by the defendant, which was near Genoa, Nebraska; that they were to work for defendant as long as it was mutually agreeable, and that they were to receive for their labor a fair and just compensation; that on the 26th day of October, 1908, the said defendant repudiated the said agreement, and ordered the plaintiff and his children to leave the place, and refused to pay any sum whatever to the said Adolph Voight and his children for the labor which they had performed; that the said Ferdinand Voight was indebted to the plaintiff because of the plaintiff's services and the services of his children in the sum of $9,530; that

Fritz Voight, one of the said brothers, brought an action in the district court for Platte county against the said Ferdinand Voight, alleging that he had worked for the defendant under an agreement that he should be paid a reasonable compensation for his services, and that said Ferdinand had failed to pay him, and that the said Ferdinand Voight was indebted to him for such services in the sum of $7,200; that Margaret A. Voight had brought suit against the defendant Ferdinand in the district court for Platte county, in which she charged that on or about the 4th day of April, 1908, said Ferdinand Voight had made an assault upon her, and had struck her a blow with his fist, and had thrown her with force and violence against a table, and by reason of such assault the said plaintiff, Margaret A. Voight, had been seriously injured, and had been compelled to submit to a surgical operation, and had been confined in the hospital, and that she had suffered injuries to the extent of $5,000 for the assault. It was also charged in the said action that the said Ferdinand Voight had abused and vilified the plaintiff in said case and had called her by vulgar and abusive names; that after the bringing of the said cases the pastor of the said brothers got the parties together and compromised their differences; that, as a result of the compromise, the defendant gave the two brothers a lease of the farm, and also made a bill of sale of a considerable amount of personal property; that the two brothers and the plaintiff's wife joined in a release of all claims that they had against the defendant, and that pursuant to this settlement they entered into possession of the farm and of the personal property. The parties appear to have made a settlement by which Ferdinand Voight promised to Adolph and Fritz Voight that he would rent his farm to them for five years at $1,000 a year, and that they might have the farm so long as he owned it; they to settle and to withdraw their suits against him. Ferdinand was to give to the brothers all of the personal property, including horses, cattle, hogs, and machinery, and also a cornfield containing from 700 to 1,000 bushels of corn, and 60 bushels of wheat, and 600

pounds of flour in the mill, and was to pay the brothers in money $2,000 each, to Adolph Voight $2,000 and to Fritz Voight $2,000. *The money was to be paid when he sold his farm.* He was also to pay Henry Voight, the son of Adolph Voight, $200. Ferdinand Voight reserved to himself the wheat in the granary, the corn in the crib, the fat hogs, the buggy team with the two gray horses and harness, and reserved to himself three rooms in the house when he should come to visit.

The instant case was brought for $2,000 promised to Adolph on the agreement. It was brought March 22, 1910. It is said that a similar suit is still pending in the district court for Platte county in which Fritz Voight is plaintiff against the defendant. It is said also that, after the pastor, Rev. Klatt, had put the agreement in writing it was read to the parties, and thereupon they got upon their knees and offered thanks to God that their difficulties had been settled.

The paper prepared by the pastor was not signed, and the parties seem to have contemplated that other papers might possibly be drawn so as to put their intention in an improved legal form. For this purpose they met in St. Edward on November 12, 1908, and certain papers were then prepared to be signed. It is claimed by the appellee that the Rev. Klatt was to go with the parties to St. Edward, but that he was prevented from doing so by Ferdinand. After the papers had been submitted, but before they were delivered, it is claimed by the appellee that one of the brothers spoke up and said that we have also got to have a writing, and that Ferdinand said to keep still about that; that, if the attorneys found out that, they would want a percentage, and that he would rather give it to the brothers than to give it to the attorneys down at Columbus. In any event the result was that there was no promise in writing to pay each of the brothers $2,000, as it was agreed upon, and as it had been written down in the unsigned agreement prepared by the Rev. Klatt. A lease of the farm was made, but it seems only to have been made for a little more than one year, instead of five.

The lease made was from the 11th day of November, 1908, until the 1st of March, 1910.  There was an agreement between all of the parties "to be good and kind to Ferdinand Voight, we will never make him any trouble or costs.  If he is on the place we will board him free, and attend to his pony team when he is away and take good care of them until his return."  The lawsuits then seem to have been settled.  A bill of sale was made by Ferdinand Voight to Adolph Voight for the consideration of one dollar and conveying to Voight five horses, one mule, a farm wagon, a truck wagon, a top buggy, 25 hogs, one-half interest in steam threshing machine, one-half interest in all farm implements on the Voight farm, and four milch cows.

The petition in the instant case alleges that the plaintiff, Adolph Voight, is the father of Emma Voight, aged 14 years, Lena Voight, aged 16 years, Annie Voight, aged 19 years, Christian Voight, aged 20 years, and Henry Voight, aged 22 years.  The age of each is set forth as it was November 1, 1908.  It is alleged that said children have always resided with the plaintiff and his wife, and that the said children and the plaintiff and his wife constituted one family; that in the month of May, 1889, at the special instance and request of the defendant, the plaintiff and his said children took up their abode with the defendant, and entered into his employ as farm laborers with the agreement that they should labor for the defendant as long as it was mutually agreeable, and at the termination of said employment plaintiff was to be paid a fair, just and reasonable compensation for the labor performed by him and his said children during their minority, and that they continued to work for the defendant under the said agreement until about November 1, 1908; that on or about said 1st day of November, 1908, certain goods and chattels were turned over by said defendant to the plaintiff in part payment of the work and labor so performed by him and his minor children as aforesaid, and on said day an account was stated between said plaintiff and the defendant of a balance still due and unpaid to the plaintiff for said work and labor, which was ascertained and fixed

at .$2,000, and that the defendant then and there agreed to pay to the plaintiff said sum of $2,000 so found due, and when he should sell his farm in the western part of Platte county upon which the parties were then living; and he agreed to put said farm upon the market and sell it within a reasonable time thereafter; that, within a few days after stating said account and entering into said agreement, the defendant repudiated the same and refused to sell his farm or to pay said sum of money; that a reasonable time has elapsed since stating said account and entering into said agreement, yet the defendant has failed and refused to sell his farm or to pay said amount of money, although payment has often been demanded, and there is due and owing from the defendant to the plaintiff upon said agreement and statement of account the sum of $2,000, with interest thereon at 7 per cent. from November 1, 1908, for which amount and costs the plaintiff prays judgment.

To this pleading there was an answer in which Ferdinand Voight made a general denial. For a further answer he alleged that the plaintiff was his brother, and that in the year 1893 the plaintiff was homeless and without means of support, and that it was agreed between the plaintiff and the defendant that the plaintiff and his family should enter the defendant's home and become members thereof, and should assist the defendant in his work upon the farm, and that the defendant was to furnish the plaintiff and his family board and lodging and medical attendance and clothing; that the plaintiff and his family entered the defendant's home and assisted the defendant in his work upon the farm, and that the defendant furnished them with board and lodging and clothes, and kept and performed all his part of the agreement, and in addition thereto supplied the plaintiff with money; that the same, with certain other considerations, exceeded in value the value of said services of the plaintiff and his family rendered to the defendant under said agreement; that said relationship continued until about the 1st of November, 1908; that on or about the 1st day of November, 1908, a controversy arose between the plaintiff and the defendant,

wherein the plaintiff claimed that the defendant was in-
debted to him on account of his services on the said farm
and on account of the services of plaintiff's family, and
wherein divers other claims against the defendant were
put forward by the plaintiff; that about the 12th day of
November, 1908, the plaintiff and the defendant had a
full and complete settlement of all matters and differences
and mutual claims and demands, including the subject
matter of this suit, whereupon it was mutually agreed by
and between them that the defendant should transfer and
convey to the plaintiff five head of horses, one mule, one
farm wagon, one truck wagon, one top buggy, four milch
cows, four calves, 25 head of hogs, one-half interest in all
the farm implements on the defendant's said farm, one-
half interest in the steam threshing machine, and one-half
of all straw and hay which the defendant had on said place
at said date, which property was of the fair and reasonable
value of $3,000, and in addition the sum of $100 in cash,
and in consideration whereof that the plaintiff should re-
lease and acquit the defendant of all debts, dues, demands,
and claims of every kind and character, including the sub-
ject matter of this suit; that the defendant fully kept and
performed all the terms and conditions of the said agree-
ment on his part to be kept and performed, transferred
and conveyed the said property to the plaintiff, and paid
the plaintiff the said sum of $100, whereupon they mu-
tually released from all debts, dues, demands, and claims
of every kind and character by an instrument in writing
in the words and figures following: "St. Edward, Neb.
Nov. 12, 1908. Agreement by and between Adolph Voight,
Henry Voight, and Christian Voight and Ferdinand
Voight, witnesseth that all lawsuits and claims of Adolph
Voight, Henry Voight, and Christian Voight against Fer-
dinand Voight are hereby fully settled and satisfied, and
that Adolph Voight, Henry Voight, and Christian Voight
hold no claims whatever against Ferdinand Voight for any
act or deed done or committed prior to this date. (Signed)
Adolph Voight.  Ferdinand Voight.  E. E. Fellers, wit-

ness. Taken and acknowledged in my presence this 12th day of November, 1908. E. E. Fellers, Notary Public."

The answer alleges that the agreement is in full force and effect and binding upon the plaintiff and defendant.

In the reply of Adolph Voight there is a general denial, except touching such matters as are alleged in the second amended petition. There is the admission that Ferdinand Voight transferred certain personal property to the plaintiff and to Fritz Voight, alleged to be of the value of $1,000. There is a denial that said property was received in satisfaction of the cause of action, or in satisfaction of the services rendered; that the plaintiff admits the execution of the instrument above quoted, but denies that he released the defendant from the obligation of the agreement described in his said petition, alleges that he was induced to execute said instrument without any consideration, and by the fraudulent representations of the defendant; that on or about the 12th day of November, 1908, the defendant represented to the plaintiff that it was necessary to execute said instrument as a written memorandum of the agreement in said petition alleged, the same having been by defendant previously dictated to and prepared by his agent; that upon the signing, and before the delivery of, said instrument, the plaintiff proposed the execution of an additional writing evidencing the defendant's aforesaid allegation to him, whereupon the defendant assured the plaintiff that such writing was unnecessary, but that he would thereafter execute any necessary or appropriate memorandum of said agreement, and at said time again promised to keep and perform all of the conditions of said agreement, and that the plaintiff being ignorant of the legal import of such instrument, and relying upon said statement for his protection, consented to the delivery of said instrument.

Upon the trial there was a verdict for the plaintiff for $2,235. Judgment was rendered on this verdict, and the defendant appeals.

Perhaps a true construction of the contract would make a termination of the lease and the payment of the $2,000

contemporaneous acts. A careful examination of the contract, in the light of the circumstances concerning the parties, indicates that the brothers, Adolph and Fritz, were to have a home on the farm until it was sold, and, when sold, each was to have his $2,000. As soon as their right to a home on the farm ceased, then they would need the money to establish a home elsewhere. If the brothers remained on the farm as the defendant's tenants, it might be unreasonable to require the defendant to pay at as early a date as the commencement of this suit, but, when he terminated the tenancy and evicted his brothers, it was time for him to pay. The sum of $2,000 was then due to the plaintiff, and the verdict is fully sustained by the evidence.

When a debt is in fact due (and that is so in this case), and it is agreed that it shall be paid upon the happening of a future event, and the event does not happen, it is held that the law implies a promise to pay within a reasonable time. 9 Cyc. 615; *Crooker v. Holmes*, 65 Me. 195, 20 Am. Rep. 687; *Works v. Hershey*, 35 Ia. 340; *Nunez v. Dautel*, 19 Wall. (U. S.) 560; *Hicks v. Shouse*, 17 B. Mon. (Ky.) 483; *Randall v. Johnson*, 59 Miss. 317, 42 Am. Rep. 365; *Button v. Higgins*, 5 Colo. App. 167. The defendant had no right to oust his brother from the home he had so long occupied without giving him the money which he honestly owed him, so that he might provide a shelter for his family elsewhere. It was reasonable to contemplate that it was in the minds of the parties that the money should be due and payable in case of eviction. When the defendant refuses to keep his contract and puts his brother out of possession, he should be made to pay.

Parol evidence explanatory of the contract was properly received under all the circumstances of the transaction. *Barnett v. Pratt*, 37 Neb. 349; *Fire Insurance Ass'n v. Wickham*, 141 U. S. 564; *Komp v. Raymond*, 175 N. Y. 102.

The consideration for the alleged agreement may be shown to include other matters as a part thereof, if the same is not inconsistent therewith. 17 Cyc. 638, 648, and

citations. *Wolf v. Haslach,* 65 Neb. 303; *Andrews v. Brewster,* 124 N. Y. 433.

We have carefully read the evidence, and have also studied the instructions. We are unable to find any substantial error.

The judgment of the district court is right, and it is

AFFIRMED.

SEDGWICK, J., not sitting.