VAN OLINDA et al. v. WHITEHEAD BROS. CO.

(Supreme Court, Appellate Division, Third Department. July 1, 1915.)

1. SALES ☞384—SALE OF MOLDING SAND—BREACH OF CONTRACT BY PURCHASER—MEASURE OF DAMAGES.

    The measure of damages for breach of contract to purchase molding sand is, where the vendor made no tender, the difference between the market and contract price, and the vendor, to recover the contract price,

must at least show, in the absence of any tender, that there was no market for the sand in which a sale could be made and damages reduced.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. ☞384.]

2. APPEAL AND ERROR ☞215—QUESTIONS REVIEWABLE—ERRONEOUS INSTRUCTIONS.

Where no exception was taken to an erroneous instruction on the measure of damages, and the rule of damages therein stated was not questioned, the judgment will not be reversed for the erroneous instruction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1309–1314; Dec. Dig. ☞215.]

3. COMPROMISE AND SETTLEMENT ☞5—WHAT CONSTITUTES.

Where parties to a contract agreed on an adjustment of their disputes, but the agreement contemplated that the same should be reduced to writing, there was no settlement until reduced to writing and signed.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 10–16; Dec. Dig. ☞5.]

Appeal from Trial Term, Albany County.

Action by Abram Van Olinda and another against the Whitehead Bros. Company. From a judgment for plaintiffs for $1,238.78 and from an order denying a new trial, defendant appeals. Conditionally modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Pierre E. DuBois, of Albany, for appellant.

John H. Gleason, of Albany, for respondents.

SMITH, P. J. Plaintiffs are the owners of some land located at Cedar Hill, upon which was some molding sand. Defendant is engaged in the buying and selling of molding sand in the county of Albany and elsewhere in the state. Upon the 12th day of June, 1906, the plaintiffs and defendant entered into a contract, of which the following is a copy:

"I hereby agree and do sell to Whitehead Bros. Co. all the molding sand on my farm at the agreed rate of two hundred dollars ($200.00) per acre.

"Said farm is located at Cedar Hill, containing about forty (40) acres.

"And I hereby agree to give to the said Whitehead Bros. Co. the full term of six (6) years, from the first day of July, 1906, to remove the said molding sand, with full power of ingress and egress for the full term of the contract. Whitehead Bros. Co. to have the sole right to dig sand on this farm during the above term, and the said Whitehead Bros. Co. have this day paid two hundred dollars ($200.00) in advance for the first acre, and each acre is to be paid for in advance.

"Signed this day, June 12, 1906.

"We hereby agree to remove from the said Van Olinda farm one acre each and every year, providing said molding sand is on said farm.

"On April 1st of each and every year agree to designate as near as possible one or one and one-half acres of molding sand which they desire to dig during the year.

"Witness our hands and seals this twelfth day of June, 1906.

                "A. Van Olinda.
                "Libbie Van Olinda.
                "Whitehead Bros. Co.,

"Witnessed by                 By Lydell Whitehead, Pres.
   "Wm. Whitehead, 2d.

"The above contract, it is understood, does not include or embrace any former contract.                 A. V. O."

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendant paid to the plaintiffs $200 upon the making of the contract. Thereafter, and upon May 6, 1908, the defendant paid to the plaintiffs another $200, and at that time a paper was executed reading as follows:

"81/100 acres taken off.

"10/100 acres taken off along the fence to be included in new contract.

"72/100 acres now measured and staked.

"Whiteheads have pd. $200 for one acre and propose to pay $200 this date and later the balance of sand up to two acres adjacent to where it is staked off.

"Dated May 6, 1908.              Whitehead Bros. Co.,
                                  "By Lydell Whitehead, Pres.
                        "A. Van Olinda.
                        "Libbie Van Olinda."

It does not appear that the defendant ever took any more sand from the plaintiffs' farm, the defendant claiming that the plaintiffs forbade its servants from coming upon the farm. This was denied by the plaintiffs, however. That there was some controversy between them is clearly shown, and upon March 29, 1909, the parties came together in the office of one John M. Bailey, an attorney at law, and a paper was drawn, reading in substance as follows:

"Referring to the contract of June 12, 1906, and the memorandum of May 6, 1908, by and between Whitehead Bros. Company and Libbie Van Olinda, in the matter of the sale and purchase of sand, etc., on the premises of said Van Olinda in the town of Bethlehem, Albany county, N. Y., it is hereby agreed this 29th day of March, 1909, by and between said parties, that William Kimmey, surveyor, shall survey the land where the said Whitehead Bros. Company have already taken off the sand under the above contract, and if the same does not contain two acres then said surveyor shall survey off a strip of land next to and adjacent to the land where said sand has been taken off to make two acres, including therein the land where the sand has been taken off as aforesaid, which said two acres of land so surveyed, including the land from which the sand has already been taken by said company, the said Whitehead Bros. Company having paid for two acres of sand, said Whitehead Bros. Company shall have the privilege of removing this sand therefrom until October 1, 1909. The said contract of June 12, 1906, is hereby abrogated and annulled and canceled, and each of the parties releases the other from all obligation thereunder or pursuant thereto.

"Witness our hands and seals this 29th day of March, 1909."

This was drawn in pencil by Bailey, apparently acting for both parties, and as the stenographer had left the office for luncheon the parties were told to come back in the afternoon, when the contract would be written out by the stenographer and they could then sign it. The defendant returned in the afternoon, but the plaintiffs did not return, and the paper was never in fact signed by plaintiffs. Thereafter, and in July, 1912, this action was brought, claiming to recover $200 an acre for eight acres of sand under the agreement of June 12, 1906. The trial judge submitted to the jury three questions: First. What was the purpose of the paper of May 6th, above set forth? Second. Whether upon the 29th of March, 1909, the parties agreed to annul the contract of June 12th. Third. The amount of sand upon the plaintiffs' farm contained within 5.13 acres, which had been surveyed by a surveyor. The jury was also authorized to find interest upon $200 from July 1, 1908, upon $200 from July 1, 1909, and the

interest on $200 from the 1st of July of each succeeding year, up to the amount that they found that plaintiffs were entitled to recover. The verdict of the jury was for $1,125.46, apparently finding for the plaintiffs for 5.13 acres of land and not allowing for interest. From the judgment entered upon this finding, and from the order denying a motion for a new trial, this appeal has been taken.

[1] As a matter of first impression, the judgment strikes one as extraordinary in allowing the plaintiffs to recover for the value of 5 acres of sand which has never been delivered, and which the plaintiffs now have and can sell to any purchaser. It is apparent from the evidence that this farm was situated in what was called a molding sand belt. That the defendant had competitors is shown by the fact that witnesses were sworn upon the trial who were employés of competitors. If this were personal property passing upon delivery, the plaintiffs might tender the property and demand the full purchase price; but no tender has been made or claimed. The proper measure of damage would seem to be the difference between the value of this molding sand per acre in the market and the price agreed to be paid by the defendant. Before the plaintiffs are entitled to recover the full purchase price, it would seem that they were at least bound to show, in the absence of any tender, which could hardly have been made in this case, that there was no market for this sand in which a sale could be made and their damages at least reduced.

[2] Notwithstanding these views, the defendant's attorneys failed to make objection to the rule of damages as stated by the trial court. To the charge of the trial judge no exception whatever was taken, and the rule of damages therein stated was not questioned. Nor is the rule of damage adopted questioned in the appellant's brief upon this appeal. This court, therefore, will not reverse the judgment for the adoption of an erroneous rule. The suggestions are made, however, for the guidance of the trial court, if a new trial be had.

[3] In the paper drawn up on March 29th it is recited that the contract of June 12, 1906, is abrogated. It is sworn by the plaintiff Abram Van Olinda, representing himself and his wife, that that was not read to him by the attorney, Bailey, upon the morning upon which it was drawn. The other evidence in the case, including that of Bailey himself, who was an uninterested witness, as he represented both parties in that transaction, is to me convincing that that part was read to the plaintiff Abram Van Olinda, and that he assented thereto. This question was submitted by the court to the jury, which found with the plaintiff thereupon. If the question were important in the case, I should not hesitate to advise holding that the verdict of the jury was against the weight of evidence upon this question. But I am unable to see how that question is relevant in this case. The parties came together to make some kind of adjustment of their difficulties. They agreed upon an adjustment, which was to be put into writing and signed. Until that paper was signed, then, as was contemplated in the making of the settlement, there was no binding agreement made; and until it was signed the plaintiffs had the right to reconsider and withdraw, and they did so. So that whatever agreement was made in the office before the attorney, Bailey, inasmuch as that was not con-

summated by the signatures of the parties to the writing contemplated, it does not change the legal rights of the parties existing prior to the attempted settlement.

The finding of the jury to the effect that there were 5.13 acres of land of molding sand remaining upon the farm is, in my judgment, against the weight of evidence. This figure is reached by the survey of land made by a surveyor, Leslie Allen. Allen himself does not pretend to say that there was molding sand to any amount within this 5 acres, but he made the survey of a plot of land pointed out to him by the plaintiffs. I have carefully examined the evidence, and I am convinced that only part of this 5 acres of land contained marketable molding sand. The evidence all seems to indicate that the molding sand was in spots only upon this land, and was not a continual bed of sand covering the entire 5.13 acres. The proof would seem to me to establish not more than 2½ acres of marketable molding sand upon the farm in question, and the verdict in excess of that amount is, in my judgment, clearly against the weight of evidence. If the plaintiffs receive the purchase price of this 2½ acres of sand which they still own and can sell again, they probably have much more than they are entitled to under their contract.

I therefore recommend that the judgment and order be reversed on the ground that the verdict was excessive, and a new trial granted, with costs to appellant to abide the event, unless the plaintiffs stipulate to reduce the verdict to $500, with interest on $200 thereof from the 1st day of July, 1908, $200 from the 1st day of July, 1909, and $100 from the 1st day of July, 1910. If such stipulation be filed, the judgment may be modified in accordance therewith, and, as modified, affirmed, without costs to either party. All concur.

PER CURIAM. Judgment and order affirmed, with costs.