[Civil No. 2941.   Filed February 10, 1931.]

[295 Pac. 782].

BARBARA DEVELOPMENT CORPORATION, a Corporation, and BARBARA-MARSHAY MINES, LTD., a Corporation, Appellants, v. T. H. JORDAN, Appellee.

498

Mr. J. E. Russell and Mr. R. B. Westervelt, for Appellants.

Messrs. Sawyer & Clark, for Appellee.

LOCKWOOD, J.—T. H. Jordan, hereinafter called plaintiff, brought suit against Barbara Development Corporation, a corporation, and Barbara-Marshay Mines, Ltd., hereinafter called defendants, to recover certain sums alleged to have been due from defendants to plaintiff. The case was tried to the court, and judgment rendered in favor of plaintiff in the sum of $6,122.56, and from the judgment and the order overruling the motion for a new trial defendants have appealed.

There is but one assignment of error, which is that the evidence does not support the judgment. On an assignment of this nature we must construe every conflict in the evidence and every reasonable intendment to be drawn therefrom in favor of the judgment of the trial court. *Korrick* v. *Robinson,* 20 Ariz. 323, 180 Pac. 446; *Kinney* v. *Neis,* 14 Ariz. 318, 127 Pac. 719. With this rule to guide us we state the facts in the case as follows:

On the twenty-third day of August, 1927, plaintiff was president of the Zuni-Arizona Oil Company, which company had some 9,000 acres of land under lease. On this date he signed a contract with the Barbara Development Corporation, by the terms of which the corporation was to finance the drilling of certain wells on the property of the oil company, plaintiff being retained as field manager for the corporation. After the contract was entered into, one John Goetz, who was then representing the corporation, inquired of plaintiff as to the customary salary for the manager of an oil company, and was informed that it was from $350 to $400 per month. No further dis-

cussion was ever had as to salary. Thereafter plaintiff entered upon his duties as such manager, and operations were carried on in a more or less desultory manner in pursuance of the agreement, from the twenty-fourth day of August, 1927, till the thirty-first day of March, 1928, after which time all work on the contract stopped.

During this period plaintiff had contracted a number of bills on behalf of the corporation. In the latter part of March he sent the corporation an itemized statement of the amount he claimed was then due from them on account of his salary and bills that he had contracted in the course of the work, amounting all told to $5,824.29, the statement covering all bills for supplies and labor up to March 31, 1928. Some correspondence was had between the general manager of the corporation, Albert de Beaulieu, and plaintiff in regard to the amount of indebtedness, and plaintiff finally wrote the former on April 28, 1928, as follows:

"During the recent visit to this city of Mr. Konselman and Mr. Russell, the Zuni-Arizona Corporation agreed to assume one-half of the Swassing, Morrison and my labor account, PROVIDING that immediate relief were forthcoming from the Barbara Development Corporation.

"If such relief is not to materialize, and is not an incentive toward the immediate payment of all outstanding bills, then the Zuni-Arizona Company feels no longer bound by this agreement, but that entire amount must be paid by the Barbara Development Corporation, who in reality are responsible for the incurring of every dollar of that expense."

On May 4th de Beaulieu replied:

"We are enclosing herewith our check for $500.00 in accordance with our recent agreement."

From that time on de Beaulieu sent plaintiff checks for small amounts at infrequent intervals, and letters

apologizing for the delay in payment more frequently. During all this time plaintiff was urging by every means in his power that the corporation finish its payments and reiterating that the offer of compromise of the account was made only on the basis of a prompt settlement, insisting that if the settlement was not made promptly the compromise offer would not be continued.

On July 18th he wrote to de Beaulieu as follows:

"I am enclosing two statements against the Barbara Development Corporation, showing the balance due, with credit given for the $1300 paid to date. One for $2,316.85, which will apply if paid within the next thirty days, or by August 18, 1928. The other is the account in full, *the exact amount due in event that the advantage offered to induce a prompt settlement is not taken.* This statement totals $4,536.85, including the entire labor accounts of Morrison, Swassing, and myself." (Italics ours.)

The matter continued thereafter with the corporation making small payments on account until the 18th of December, on which date it tendered plaintiff $167.99, claiming it was the balance still due. This plaintiff refused to accept, and thereafter suit was filed. Such other facts as are necessary for the determination of the case will be referred to as necessity arises.

The first contention of defendants is that there was a compromise agreement made between the parties by the terms of which there was a balance due on the account as rendered on March 31st of only $167.99, and that tender of this had been duly made to plaintiff. It is apparent from the foregoing statement of facts that while an offer of compromise was made, it never reached the status of an accord and satisfaction. Plaintiff offered to accept less than the amount he claimed due, conditional upon a prompt settlement of the balance. So far as the record

shows, there was no consideration for the alleged compromise, and it would be void on that account alone. 5 R. C. L. 889, § 12. But assuming, for the sake of argument, that a sufficient consideration had been given, it is evident the terms of the compromise were not lived up to. The offer was expressly conditional upon "immediate relief." The corporation, instead of accepting this offer, and paying the amount due under the compromise promptly, paid small installments thereon, and on July 18th was notified by plaintiff that unless the balance due under the compromise offer was paid by August 18th he would insist on payment in full of the amount billed. Since the corporation had not complied with the terms of the offer, plaintiff was justified in treating the contract of compromise as rescinded and proceeding on the original cause of action. *Benson* v. *Larson,* 95 Minn. 438, 104 N. W. 307; 12 C. J. 360.

An agreement, to accept a certain sum in satisfaction of a claim providing the payment is made within a stipulated time, fails unless the sum agreed upon is actually paid within the prescribed time. *Humphreys* v. *Cincinnati Third Nat. Bank,* (C. C. A.) 75 Fed. 852. We are of the opinion that in view of all the circumstances of the case as shown by the record, the corporation did not settle the claims within a reasonable time, and therefore could not hold plaintiff to his offer of a compromise. Such being the case he could recover the entire amount of all accounts, less any sums actually paid. *Humphreys* v. *Bank, supra.*

The next question is as to the amount due. In determining this the evidence must be construed most strongly in favor of plaintiff, but there must be some evidence at least to support every item for which judgment was rendered. This suit is based on six causes of action, the last for salary due plaintiff and

the other five for various assigned claims. We have examined and analyzed the evidence carefully. It appears to us it may fairly be said to show the following facts:

An account was rendered by plaintiff to the corporation on March 31st, for $5,824.29, which he claimed was the total amount due for all purposes to that date. This included salary for himself in the sum of $2,100. We think the court was justified on the evidence in treating this amount of indebtedness as admitted by defendants. In addition thereto, there is sufficient evidence to show a merchandise charge incurred after March 31st of $191.22, and a freight charge before then of $12.56, bringing the total amount of indebtedness, with the exception of plaintiff's salary account after that date, to $6,028.07. On this it is admitted $3,400 was paid, which would leave a balance due plaintiff of $2,628.07.

There remains but one question on this point, and that is as to whether plaintiff was entitled to a salary as field manager of the corporation up to the time of his bringing suit. So far as salary before that date is concerned, while defendants claim there was no agreement on any amount, we think the evidence, taken as a whole, would sustain a finding by the court that it had been fixed at $350 per month, and that it then amounted to $2,100. But the record shows that on May 18, 1928, plaintiff sent to the corporation in New York City the following letter:

"I herewith tender my resignation as a member of the Board of Directors of the Barbara Development Corporation, to become effective immediately.

"I also herewith tender my resignation as field manager of the Barbara Development Corporation, to become effective immediately.

"I further request that my name be omitted from further financial statements, prospectuses, or literature of any or all kinds, to be issued on and after this date by the Barbara Development Corporation."

No formal acceptance of this resignation appears in the record, but the entire correspondence thereafter leads inevitably to the conclusion that both parties considered their definite legal relations at an end, except so far as it might be necessary to continue them for the purpose of settling the bills already incurred. It is true there was some discussion as to renewing work, but this was based apparently upon a hope for the future, and not a continuation of a past existing situation. We are of the opinion plaintiff cannot collect a salary as field manager for the corporation after May 18, 1928. He could, however, collect such salary from March 31st to May 18th, which at the agreed rate would amount to $560. This would make the total amount due under the evidence $3,188.07, instead of the $6,122.56 allowed by the trial court, evidently on the theory that plaintiff's salary continued to the bringing of suit.

The third question is as to whether such judgment should run only against the Barbara Development Corporation, or also against the Barbara-Marshay Mines, Ltd. There is no question that the original indebtedness was that of the Barbara Development Corporation. It is alleged, however, in the complaint that the Mines Company about November 1, 1928, consolidated with the Development Corporation, took over its assets and assumed its liabilities, and plaintiff's claim against the Mines Company is based upon this theory.

The record shows a situation frequently existing in regard to speculative mining and oil propositions in the west. The Barbara Development Corporation owned and leased various properties which might eventually develop into profitable oil-wells and mines. It attempted to finance the development of its properties by the sale of stocks and bonds to the general

public. After a period of time, apparenty being unable to secure funds for further development in this manner, it attempted to consolidate the Barbara Development Corporation with two other already existing companies of similar nature, through the organization of a new corporation known as Barbara-Marshay Mines, Ltd., and offered the stockholders of the Development Corporation the right to exchange their stock for stock in the new corporation. As to whether or not an actual consolidation of the various companies was legally made we need not determine. We are of the opinion the record is sufficient to sustain a finding by the trial court that the Barbara-Marshay Mines, Ltd., did take over the assets of the Barbara Development Corporation, and assume its liabilities, and particularly the liabilities in question in the present action.

This disposes of the questions raised by the assignment of error on the appeal. It appears that judgment was properly rendered against both defendants, but for a sum $2,934.49 in excess of the amount justified by the evidence, which excess was all on the sixth cause of action. Under these circumstances, we think it unnecessary that the case be remanded for a new trial, as justice can be done by a modification of the judgment. It is therefore ordered that it be modified by reducing the amount on the sixth cause of action from $4,806.11 to $1,871.62, and as so modified, the judgment is affirmed, defendants to recover their costs in this court.

McALISTER, C. J., and ROSS, J., concur.